IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

FRED L. BILLITER, JR.,

        Plaintiff,

                                                                Civil Action 2:19-cv-715; 2:19-cv-1871
v.                                               Judge James L. Graham
                                               Magistrate Judge Kimberly A. Jolson

CRAIG AUFDEMKAMPE, et al.,

        Defendants.

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion to Dismiss and Motion for Summary Judgment for Failure to Exhaust. (19-cv-715, Doc. 12; 19-cv-1871, Doc. 13). For the following reasons, it is **RECOMMENDED** that Defendants' Motions be **DENIED**.

**I.    BACKGROUND**

Plaintiff, a *pro se* prisoner currently incarcerated at Noble Correctional Institution ("NCI") brought this case against Defendants Craig Aufdemkampe, John Richards, and John Wheeler, alleging that they retaliated against him in violation of his First Amendment rights. Plaintiff filed duplicative complaints in this matter (*see* 2:19-cv-715 and 2:19-cv-1871) (hereinafter "The Complaint"), which are substantively the same.

Plaintiff's allegations stem from an alleged incident on May 29, 2018. (*See* 2:19-cv-1871, Doc. 1 at 5). At that time, Plaintiff held a "cadre status," meaning that he was housed in the honors dorm and received certain privileges, including a paid job as a gardener. (*See id*. at 5). Until the events giving rise to this lawsuit, Plaintiff had been housed in the honors dorm for seven-and-a-half years. (*Id*. at 5–6).

In April 2018, Plaintiff underwent his second hernia surgery. (*Id*. at 5). Prison medical staff placed him under a "medical restriction," prohibiting him from bending, pulling, pushing, or lifting anything over ten pounds. (*Id*.). Plaintiff alleges that, on May 29, 2018, while still under the medical restriction, Defendant Deputy Warden Aufdekampe "sent a direct order" to Defendant Richards "to give [Plaintiff] a direct order to weed all the institution's flower beds for incoming mulch." (*Id*.). Plaintiff "sent a kite to Ms. Sawyer of [NCI] medical staff and asked who had the right to overrule [his] medical restriction," to which Ms. Sawyer responded, "no one but NCI [medical staff] can overrule a medical restriction due to surgery." (*Id*.) Plaintiff alleges next that Defendant Richards ordered him to prepare the flower beds. (*Id*.). According to Plaintiff, he informed Defendant Richards of his medical restriction and refused to do the work. (*See* 2:19-cv-715, Doc. 8 at 5).

Defendant Richards then "returned to his office" and issued Plaintiff two conduct reports, "which he presented to [Defendant] Sgt. Wheeler and had [Plaintiff] removed from the Cadre Honor Dorm." (*Id*.). Plaintiff alleges that, as a result of the conduct reports, he lost his cadre status, honors housing, and paid job as a gardener. (*See* 2:19-cv-1871, Doc. 1 at 5). Additionally, he is no longer able to grow flowers for the Columbus Children's Hospital or teach gardening to other inmates. (*Id*.).

Defendants moved to dismiss Plaintiff's claims, asserting, among other things, that Plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act (the "PLRA"). (*See* 2:19-cv-1871, Doc. 13). Because exhaustion is a threshold issue, the Undersigned, on December 18, 2019, notified the parties of her intent to convert Defendants' Motion to Dismiss to a summary judgment motion on the issue of exhaustion and directed the

parties to submit all evidence pertinent to that issue. (*See* 2:19-cv-715, Doc. 19). The parties did so, (*see* Docs. 20, 21), and as such, the matter is now ripe for resolution.

## II. EXHAUSTION

The Undersigned must first decide whether Plaintiff failed to exhaust his administrative remedies. For the foregoing reasons, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment on Exhaustion be **DENIED**.

### A. Standard

The PLRA provides that an inmate may not bring an action related to prison conditions under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Because the Defendants bear the burden of proof on exhaustion, they bear an initial summary judgment burden [that] is higher in that [they] must show that the record contains evidence satisfying [their] burden of persuasion" and "that no reasonable jury would be free to disbelieve it." *Does 8–10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019) (quotation marks and citation omitted). The Court must "further analyze whether an inmate has made affirmative efforts to comply with the administrative procedures" and "whether those efforts to exhaust were sufficient under the circumstances." *Id*. (quotation marks and citations omitted). "A district court should grant summary judgment only if a defendant establishes that there is no genuine dispute of material fact that the plaintiff failed to exhaust." *Id.*

Importantly, "a prisoner need exhaust only 'available' administrative remedies." *Brown v. Stacy*, No. CV 16-91-DLB-EBA, 2018 WL 1526168, at *2 (E.D. Ky. Mar. 28, 2018) (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1855, 195 L. Ed. 2d 117 (2016)). "For purposes of the PLRA, 'available' means capable of use for the accomplishment of a purpose, and that which is accessible or may be obtained." *Brown*, 2018 WL 1526168, at *2 (quoting *Ross* 136 S. Ct. at 1859). There are three

3

circumstances that may render an administrative remedy "unavailable:" (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use [--i.e.,] some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859–60.

**B. Discussion**

As Defendants explain, Ohio prisons offer two separate grievance procedures to inmates. The first, is the traditional three-step grievance procedure, which governs most claims. *See* Ohio Admin. Code § 5120-9-31. The second, is the appeals process, which governs in place of the three-step procedure when an inmate violates a rule of conduct. *See* Ohio Admin. Code §§ 5120-9-06–09). Under the appeals process, when an inmate is charged with a conduct violation, he is issued a conduct report. *See* Ohio Admin. Code 5120-9-07. A hearing officer then conducts an interview with the inmate and may choose to either decide and dispose of the violation himself or herself or refer the violation to the Rules Infraction Board ("RIB") or Serious Misconduct Panel. *Id*. If the hearing officer refers the matter to the RIB panel, an inmate may challenge the panel's finding within 15 days of its decision. Ohio Admin. Code 5120-9-8(O). Importantly, that opportunity to appeal applies only when the hearing officer refers the violation to the RIB. (*See id*.).

At first, in their Motion to Dismiss, Defendants asserted that, because Plaintiff violated a rule of conduct and received two conduct reports, he should have used the appeals process rather than the three-step grievance procedure. (*See* Doc. 12 at 11–12). Specifically, they asserted that

4

Plaintiff should have appealed his conduct reports to the managing officer or designee after receiving the RIB panel's disposition. (*Id*. at 12). But, in their supplemental brief, Defendants backpedal a bit. They state that their earlier argument was "misguided" as Plaintiff's conduct report never went before the RIB panel—rather, the hearing officer disposed of the matter himself. (Doc. 21 at 7). Defendants then concede that, once the RIB chair affirmed the hearing officer's decision, Plaintiff exhausted his administrative remedies. (*Id*. at 8).

Undeterred, Defendants "maintain that Plaintiff, nevertheless should have utilized the traditional three-step grievance procedure to contest the removal of his honor dorm status." (*Id*.). But Plaintiff did do so, and Defendants told him to use the other procedure. (*See, e.g.*, Doc. 21-3 at 1 (responding to Plaintiff's first complaint and stating, "[y]ou cannot use the informal complaint process to appeal a decision on a conduct report); *id*. (responding to Plaintiff's second complaint and stating that, "[i]n this case, using the Inmate Grievance Procedure (IGP) to address any concerns in regard to your conduct report or job classification is incorrect use of the process. It is recommended that you use the appeal mechanisms that are in place for job assignments and conduct reports. Upon review of the above information, I have found that your complaint does not fall within the scope of the grievance system. Therefore, no further action will be taken regarding this matter at this time")). Nevertheless, Defendants assert that, "[d]espite being told he was utilizing the wrong grievance procedure, Plaintiff should have ultimately appealed those decisions to Office of the Chief Inspector after his notification of grievance was denied." (Doc. 21 at 8).

Defendants expect too much of Plaintiff. And a reasonable juror could conclude that Plaintiff was in a lose-lose situation, and consequently, did not have an "available" administrative remedy. *Cf. Miller v. Klee*, No. 17-11006, 2018 WL 1354473, at *8 (E.D. Mich. Feb. 23, 2018),

*report and recommendation adopted*, No. 17-11006, 2018 WL 1326382 (E.D. Mich. Mar. 15, 2018) ("Plaintiff reasonably could have concluded, based on the content of this response, that prison officials were addressing his grievance via the PREA procedure . . ., and that he did not need to proceed further through the three step grievance procedure. . . . Thus, if prison officials misled plaintiff, albeit perhaps unintentionally, into believing that the PREA was the proper method for exhausting his sexual assault claims, it is reasonable that he would continue to use this procedure for exhaustion.")

The Undersigned finds that Plaintiff "made affirmative efforts to comply with the administrative procedures," *Does 8–10*, 945 F.3d at 961, but that "prison officials misled [him], albeit perhaps unintentionally, into believing that [the appeals process] was the proper method for exhausting" his claim, *see Miller*, 2018 WL 1354473, at *8. Accordingly, Defendants are not entitled to summary judgment for failure to exhaust.

### C. Conclusion

For the foregoing reasons, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment for Failure to Exhaust be **DENIED**.

## III. FAILURE TO STATE A CLAIM

Defendants have also moved to dismiss Plaintiff's Complaint for failure to state a claim. (Doc. 13 at 6–10). Although not entirely clear, Plaintiff appears to be alleging that Defendants retaliated against him in violation of the First Amendment. The Undersigned will therefore determine whether Plaintiff's allegations of retaliation satisfy basic pleading requirements.

### A. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires that a complaint "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556

U.S. 662, 663–64, 678 (2009); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the complaint, a court must construe it in favor of the plaintiff and accept all well-pleaded factual allegations as true. *Id*. at 57. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added) (citing *Twombly*, 550 U.S. at 556).

On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. Twombly, 550 U.S. at 555; see also *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (noting that a plaintiff must give specific, well-pleaded facts, not just conclusory allegations). In other words, while "detailed factual allegations" are not required under Fed. R. Civ. P. 8(a)(2)'s "short and plain statement" rule, the law "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677–78 (quotation marks and citations omitted).

Furthermore, although pro se complaints are to be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "basic pleading essentials" are still required, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Stated differently, "[t]he requirement for liberal construction. . . does not translate to ignoring a clear failure in the pleading to allege facts which set forth a cognizable claim." *Kidd v. Neff*, No. 1:12-cv-40, 2012 WL 4442526, at *2 (E.D. Tenn. Sept. 25, 2012 (dismissing pro se plaintiff's "incredibly vague" complaint), *see also Smith v. Breen*, No. 09-2770, 2010 WL 2557447, at *6 (W.D. Tenn. June 21, 2010) (collecting cases). Ultimately, to avoid dismissal, a plaintiff's complaint "must contain either direct or inferential allegations with respect to all the material elements" of each claim. *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003) (citing *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003)).

**B. Discussion**

To state a claim for retaliation, a plaintiff must allege that "(1) [he] engaged in protected conduct; (2) an adverse action was taken against [him] . . . ; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [his] protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Plaintiff's allegations, while light, satisfy this standard.

First, Plaintiff has set forth sufficient facts to plead that he engaged in protected conduct. Defendants frame the alleged protected conduct as Plaintiff's refusal to work. (*See* Doc. 13 at 10). But the Undersigned views the allegations more broadly. Plaintiff alleges not only that he refused to work but also that he complained about being ordered to perform work in violation of his doctors' orders. For example, he alleges that he sent a kite to NCI medical staff, expressing his concern about Defendants' orders to perform work conflicting with his medical restrictions, (*see* 2:19-cv-1871, Doc. 1 at 5), and that he voiced these same concerns to Defendant Richards, (*see* 2:19-cv-715, Doc. 8 at 5). "An inmate has the right to complain or grieve to government officials about the conditions of their confinement." *Scuba v. Wilkinson*, No. 1:06-CV-160, 2010 WL 99348, at *10 (S.D. Ohio Jan. 6, 2010) (citing *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996)). And Plaintiff's allegations are enough to plead that he engaged in protected conduct. *See, e.g.*, *Stephenson v. Black*, 887 F.2d 1088 (6th Cir. 1989) (internal citations omitted) (reversing and remanding district court's decision, noting that "[a]lthough [plaintiff] has no protected interest in placement in a particular institution, he does have a protected right to complain about the conditions of the jail").

Second, Plaintiff's loss of a paid job and cadre status constitutes an adverse action at the pleading stage. "[A]n action is adverse if it is capable of deterring a person of ordinary firmness

from exercising his or her right to access the courts." *Brockman v. McCullick*, No. 17-10399, 2018 WL 3207902, at *4 (E.D. Mich. June 29, 2018) (quotation marks and citation omitted). Here, Plaintiff alleges that, after he refused to weed the flowerbeds, he lost his cadre status, honors housing, and paid job. (*See* 2:19-cv-1871, Doc. 1 at 5). While generally a prisoner has no constitutional right to prison employment or a particular prison job, *Jewell v. Lreous*, 20 F. App'x 375, 377 (6th Cir. 2001), "in unpublished cases, the Sixth Circuit has held that termination of prison employment can amount to adverse action for purposes of a First Amendment retaliation claim," *Moore v. Fales*, No. 1:18-CV-1237, 2019 WL 667886, at *3 (W.D. Mich. Feb. 19, 2019) (citing *Walton v. Gray*, 695 F. App'x 144, 146 (6th Cir. 2017) (noting that "[t]his court has indicated that loss of a prison job can constitute an adverse action for retaliation purposes); *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (concluding that a threat to have a prisoner moved from a unit so that he would lose his job was "capable of deterring a person of ordinary firmness from exercising protected right")). Based on these authorities, Plaintiff's Complaint satisfies the second requirement.

Finally, Plaintiff's allegations are enough to raise an inference of causation. At the pleading stage, Plaintiff must show that Defendants removed him from honors housing and his paid job at least in part because he complained about his conditions of confinement. *See Thaddeus-X*, 175 F.3d at 394. Plaintiff's Complaint meets that bar. Plaintiff alleges that, on May 29, 2018, Defendant Richards ordered him to weed the flower beds. (*See* 2:19-cv-1871, Doc. 1 at 5). Plaintiff "inturn [sic] explained to Mr. Richards that I could not perform that task due to the medical restriction that was placed on me by the medical staff after having hernia surgery performed not once but twice[.]" (2:19-cv-715, Doc. 4-2 at 5). He alleges that, "after that incounter [sic], Mr. Richards returned to his office and proceed [sic] to issue me two tickets to

9

which he presented to Sgt. Wheeler[.]" (*Id*.). As a result, Plaintiff lost his "institution status as being a Cadre in the Honor Dorm" and lost his "institutional pay for [his] job assignment." (*Id*. at 6).

This sequence of events as alleged, especially given their timing, suggest a causal link. It appears that Plaintiff received the conduct reports on the same day he engaged in the protected conduct. (*See generally id*.; *see also* 2:19-cv-1871, Doc. 1 at 5–6). "'[T]emporal proximity alone may be significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Brockman*, 2018 WL 3207902, at *6 (quoting *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004)) (holding that, because the alleged adverse action and protected conduct took place on the same day, the timing "demonstrate[d] the plausibility of [plaintiff's] retaliation claims"). Plaintiff's Complaint therefore satisfactorily pleads the third requirement of a retaliation claim.

In sum, the Undersigned finds that Plaintiff has pled sufficient facts to state a plausible retaliation claim against Defendants.

**C. Immunity**

Finally, Defendants assert that they are entitled to qualified immunity as well as immunity under the Eleventh Amendment. (*See* Doc. 12 at 12–15).

Defendants, in their Motion to Dismiss, state simply that "plaintiff's allegations, even construed in the light most favorable to him, fail to demonstrate a genuine factual dispute as to whether a constitutional violation occurred." (*Id*. at 13). But the question at the pleading stage is whether Plaintiff has stated a plausible claim for retaliation, and the Undersigned concludes that he has. Consequently, Defendants' conclusory qualified immunity argument fails.

Defendants also assert that, to the extent Plaintiff is suing them in their official capacities, they are entitled to immunity under the Eleventh Amendment. (Doc. 12 at 14). But "[t]he Supreme Court recognizes an exception to [the state sovereign immunity] rule if an official-capacity suit seeks only prospective injunctive or declaratory relief." *Cady v. Arenac Cty.*, 574 F.3d 334, 344 (6th Cir. 2009) (citing *Papasan v. Allain*, 478 U.S. 265, 276 (1986)). Accordingly, to the extent that Plaintiff is seeking to recover his cadre status, paid job, and honors housing, he may proceed with this request for prospective injunctive relief against Defendants.

### D. Conclusion

For the foregoing reasons, it is **RECOMMENDED** that Defendants' Motion to Dismiss for Failure to State a Claim be **DENIED**.

## IV. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    IT IS SO ORDERED.

Date:   January 28, 2020                                  /s/ Kimberly A. Jolson
                                                                       KIMBERLY A. JOLSON
                                                                       UNITED STATES MAGISTRATE JUDGE